Exhibit 1

2016-0175059-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**16109795**

Reuben M. Green - 51
DEC 13, 2016 04:24 PM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

# IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

MiMedx Group, Inc.
_____

_____

_____

PLAINTIFF

VS.

Tornquist, Luke
_____

_____

_____

DEFENDANT

CIVIL ACTION
NUMBER _____ **16109795** _____

$216.00 COST PAID

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and served upon the Plaintiff's attorney, whose name and address is:

> **Joseph Wargo**
> **Wargo & French LLP**
> **999 Peachtree Street NE**
> **26th Floor**
> **Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___ **14** ___ day of _____ **December** _____, 20 __ **16** ___.

Clerk of Superior Court

_____
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

2016-0175057-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**16109795**

Reuben M. Green - 51
DEC 13, 2016 04:24 PM

*Rebecca Keaton*

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

IN THE SUPERIOR COURT FOR COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| MIMEDX GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION FILE |
| | § | |
| v. | § | NO. _____ |
| | § | |
| LUKE TORNQUIST | § | |
| | § | |
| Defendant | § | |

## COMPLAINT

Plaintiff MiMedx Group, Inc. ("MiMedx") files this Complaint against Defendant

Luke Tornquist ("Tornquist") and alleges the following:

## PRELIMINARY STATEMENT

1.      This action arises from Tornquist's illegal scheme (and conspiracy with other

current and former MiMedx employees and certain distributors) to misappropriate MiMedx's

trade secrets and other confidential, proprietary business information, to unlawfully compete

with MiMedx and to harm and otherwise to cause damage to MiMedx's business and business

reputation.

2.      Tornquist was, until recently, a sales representative of MiMedx, who while

employed by MiMedx owed MiMedx contractual and legal obligations to refrain from

engaging in business other than MiMedx business, from competing with MiMedx, from

soliciting MiMedx's customers and employees and from disclosing and misappropriating

MiMedx's trade secrets and other confidential information.  After his employment with

MiMedx, Tornquist still owes MiMedx contractual and legal obligations to refrain from

competing with MiMedx, from soliciting MiMedx's customers and employees and from

1

disclosing and misappropriating MiMedx's trade secrets and other confidential information.

3.      Upon information and belief, Tornquist breached these duties while employed by MiMedx by, individually and in concert with other MiMedx current and former employees and certain distributors, selling medical products of companies other than MiMedx, including those of MiMedx's competitors.  Additionally, upon information and belief, Tornquist has breached his contractual duties and legal duties by, individually and in concert with other MiMedx current and former employees and certain distributors, soliciting other MiMedx' employees to act similarly.  Further, upon information and belief, Tornquist has already used MiMedx's trade secrets and other confidential information, including trade secret information concerning customer sales history and product usage by specific hospitals and doctors to which Tornquist was privy as an result of his recent employment with MiMedx, in order to target sales of products other than MiMedx products, including competitors' products, to MiMedx customers.

4.      In addition to his breaches while employed by MiMedx, in November 2016, Tornquist announced his desire to leave MiMedx's employment and, upon information and belief based on his prior conduct, had an intention to thereafter violate his contractual obligations requiring him for a certain, reasonable time after the termination of his employment to refrain from competing with MiMedx, from soliciting MiMedx's customers and employees and from disclosing and misappropriating MiMedx's trade secrets and other confidential information.

5.      Tornquist has also raised completely false factual assertions that MiMedx's business practices violate various laws.  Tornquist, through his counsel, has recently threatened to publicly disclose these factually baseless allegations in what appears to be a

transparent effort to extort MiMedx into releasing him from his contractual obligations not to compete with MiMedx and not to solicit MiMedx's customers and employees.   It has thus become readily apparent that Tornquist is and desires, upon information and belief, to continue using MiMedx's trade secrets and confidential information in order to unlawfully injure MiMedx.

6. By this action, MiMedx seeks temporary, preliminary and permanent injunctive relief, preventing Tornquist from breaching his contractual and legal obligations to MiMedx.  MiMedx also seeks an award of compensatory and punitive damages.

## PARTIES, JURISDICTION AND VENUE

7. MiMedx is a corporation with its principal place of business located in Cobb County at 1775 West Oak Commons Ct., Marietta, Georgia 30062.

8. Tornquist is a natural person.  On information and belief, Tornquist is a citizen of the State of Minnesota.   Tornquist is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91 and pursuant to his express agreement and consent in the relevant contracts with MiMedx and may be served with a copy of the Summons and Complaint at 1818 Goodrich Ave., St. Paul, Minnesota 55105.

9. The Court has jurisdiction over the subject matter of the Complaint pursuant to Article 6, Section 4, Paragraph 1 of the Georgia Constitution of 1983.

10. Venue is proper in the Court pursuant to Article 6, Section 2, Paragraphs 3 and 6 of the Georgia Constitution of 1983 and O.C.G.A. § 14-2-510, as well as by Tornquist's express agreement and consent.

## FACTUAL BACKGROUND

11. MiMedx is a leading regenerative medicine company utilizing human amniotic

tissue and patent-protected processes to develop and market advanced products and therapies to various healthcare sectors. MiMedx sells its medical products in Georgia and throughout the United States in a highly competitive marketplace. MiMedx's headquarters in Marietta, Georgia houses not only its management team and customer service department, but its manufacturing facility as well. MiMedx is a publicly traded company listed on the NASDAQ exchange.

12.     Tornquist recently separated from his employment as an Account Executive with MiMedx. While employed by MiMedx, Tornquist was responsible for sales in Minnesota. Tornquist commenced his employment with MiMedx in or about September, 2013. Tornquist's immediate supervisor while employed by MiMedx was Jess Kruchoski.

13.     In connection with his employment with MiMedx, Tornquist attended training in Marietta, Georgia at the outset of his employment and has traveled to Marietta, Georgia at least two additional times to meet with doctors from his territory at MiMedx's Marietta, Georgia headquarters. Tornquist also regularly initiated telephone calls to Marietta, Georgia to speak with MiMedx customer service and sales management representatives who are located at MiMedx's headquarters. Furthermore, Tornquist sold MiMedx's products that are manufactured in and shipped from Marietta, Georgia; Tornquist either places orders directly or orders are placed at his recommendation and are delivered to Marietta, Georgia to be fulfilled.

14.     Prior to and as a condition of his employment with MiMedx, Tornquist executed (among other contracts) a Non-Competition Agreement (the "Tornquist Non-Competition Agreement") and a Confidentiality and Non-Solicitation Agreement (the "Tornquist Confidentiality/Non-Solicitation Agreement").

15.     The Tornquist Non-Competition Agreement provides (among other things) that, during his employment with MiMedx and for one year after the cessation of his employment with MiMedx, Tornquist "shall not, within [the continental United States], either directly or indirectly, provide the same or similar services (or consulting with respect to the same or similar services) as those provided by Employee for or on behalf of [MiMedx] within two (2) years prior to the Termination Date, for any individual or entity that provides products or services that are competitive with or the same as or similar to those provided by the Business."  A true and correct copy of the Tornquist Non-Competition Agreement is attached hereto as Exhibit 1 and incorporated herein by this reference.

16.     The Tornquist Confidentiality/Non-Solicitation Agreement provides (among other things) that:

> a.  during his employment and for three years thereafter, Tornquist "shall hold all Confidential Information in confidence and shall not directly or indirectly divulge or make use of … any Confidential Information or Trade Secrets outside of employment with [MiMedx]";
>
> b.  during his employment and for one year thereafter, Tornquist "will not directly or indirectly solicit or attempt to solicit from any of the Customers with whom Employee had Material Contact during the last two (2) years of Employee's employment with the Company any business in competition with the Business of the Company"; and
>
> c.  during his employment and for one year thereafter, Tornquist "will not directly or indirectly solicit or attempt to solicit any employee of the Company … with whom Employee had Material Contact during the last

5

two (2) years of Employee's employment with [MiMedx] for the purpose

of encouraging, enticing, or causing said employee to terminate

employment with [MiMedx]."

A true and correct copy of the Tornquist Confidentiality/Non-Solicitation Agreement is

attached hereto as Exhibit 2 and incorporated herein by this reference.

17.     Tornquist's Confidentiality/Non-Solicitation Agreement further provides that,

while employed by MiMedx, Tornquist "agrees to faithfully perform the duties assigned to

[Tornquist] and will not engage in any other employment or business activity while employed

by [MiMedx] which would interfere with [Tornquist's] full-time performance of [Tornquist's]

duties for [MiMedx's], or cause a conflict of interest."

18.     Both Tornquist's Non-Competition Agreement and Confidentiality/Non-

Solicitation Agreement further expressly provide, to which Tornquist agreed, that a breach

thereof would cause MiMedx irreparable injury for which there is no adequate remedy at law.

19.     These MiMedx restrictive covenants are a prerequisite to employment for all

of its employees (not just Tornquist) because of the highly competitive nature of this

business, and these restrictive covenants are standard in the industry.  Tornquist is aware that

other MiMedx employees entered into non-competition agreements and confidentiality/non-

solicitation agreements substantially similar to the ones he entered.

20.     As a result of Tornquist's position as Account Executive, Tornquist had access

and was privy to trade secrets and other confidential business sales information of MiMedx

concerning its customers located in Minnesota, including without limitation sales reports, his

commission reports and reports identifying the Group Purchasing Organizations and

Hospitals (which include actual and potential MiMedx customers) in his territory and their

specific purchasing needs, as well as information concerning MiMedx business, product, and sales strategy in his territory.  Upon information and belief, Tornquist was also provided, without MiMedx's consent or authorization, additional trade secret and confidential business information by other employees of MiMedx with whom he is acting in concert to violate his legal and contractual duties to MiMedx.

21.     The above-alleged confidential, trade secret information of MiMedx held by Tornquist (the "Trade Secrets") are not known by or available to the public or to MiMedx's competitors.  In addition, MiMedx's Trade Secrets derive economic value from not being generally known to, and not being readily ascertainable by proper means by others who can obtain economic value from their disclosure and use, including MiMedx's competitors.  In this regard, if disclosed to and used by a competitor, MiMedx's Trade Secrets would allow competitors to know and take advantage of MiMedx's strategies in sales, volumes and other respects, thereby giving such competitors a competitive advantage to maintain their current business and to obtain new business which otherwise would have been conducted with MiMedx.  Specifically, competitors would know the exact person and/or medical practice group who should be solicited for the sale of specific competitive or comparable product to that being sold by MiMedx, thereby usurping MiMedx's product sales.  Disclosure to and use of MiMedx's Trade Secrets by its competitors would also enable MiMedx's competitors to cherry pick MiMedx's top sales people, including by disclosure of the economic terms which may lure them away from MiMedx's employ.

22.     Upon information and belief, MiMedx alleges that Tornquist has engaged in the following conduct individually and in concert with other MiMedx employees and certain distributors:

7

a. acting in a manner disloyal to MiMedx and contrary to MiMedx's best interest during his full-time employment with MiMedx by, without limitation, planning, soliciting and/or selling medical products of companies other than MiMedx (including products of MiMedx's competitors);

b. unlawfully competed with MiMedx during his employment with MiMedx by, without limitation, soliciting and/or selling medical products of one or more of MiMedx's direct competitors to MiMedx's customers and potential customers;

c. misappropriated MiMedx's Trade Secrets and other confidential, proprietary information both properly and improperly obtained by, for example, utilizing knowledge of the purchasing patterns of MiMedx's customers, such as the Veterans' Affairs Hospitals, including products and volumes purchased and purchasing contacts, obtained as a result of his or other's employment with MiMedx to make sales of products, including competing products, to MiMedx customers and potential customers with whom he has had Material Contact as a result of his employment with MiMedx;

d. unlawfully solicited other employees of MiMedx to engage in similar unlawful and unauthorized conduct; and

e. establishing or participating in a shell front business(es) through which he engaged in this unlawful and illegal conduct.

23.     Tornquist did not disclose any of the above-alleged conduct to MiMedx.

8

24.     Realizing that he is duty bound by his Non-Competition and Confidentiality/Non-Solicitation Agreements not to engage in the above-alleged conduct and in an apparent improper attempt to gain leverage to pressure MiMedx to relieve him of his obligations under these contracts, Tornquist (with Kruchoski) has manufactured wholly false factual assertions that MiMedx's business practices violate various laws.  Indeed, through his lawyer, Tornquist (and Kruchoski) has recently threatened to publicly disclose these baseless claims presumably unless MiMedx releases him from his obligations.  It is thus readily apparent to MiMedx that Tornquist intended to leave MiMedx's employ and, upon information and belief, continue to trade upon MiMedx's Trade Secrets and other confidential, proprietary information concerning MiMedx's business and customers to MiMedx's competitive disadvantage and injury.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

25.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

26.     MiMedx has complied with its obligations under the Tornquist Non-Competition and Confidentiality/Non-Solicitation Agreements, except and to the extent that the same have been excused or prevented.

27.     Upon information and belief, Tornquist violated and is in material breach of his obligations under his Non-Competition and Confidentiality/Non-Solicitation Agreements as a result of his:

a.      use of MiMedx's confidential and Trade Secret information to solicit MiMedx's customers to purchase products of and/or conduct business

9

with one or more companies other than MiMedx, including MiMedx's competitors;

b.      solicitation of MiMedx's customers with whom he has had Material Contact during the last two years to purchase products of and/or conduct business with one or more of MiMedx's competitors, rather than with MiMedx;

c.      solicitation of MiMedx's employees with whom he had had Material Contact during the last two years to sell products other than MiMedx products;

d.      providing the same services he provided to MiMedx on behalf of one or more competitors of MiMedx for his own benefit, including without limitation selling products of one or more of MiMedx's competitors; and

e.      engaging in business activity that interfered with his duties to MiMedx while employed with MiMedx, including without limitation selling products of one or more companies other than MiMedx, including MiMedx's competitors.

28.      As a direct and proximate result of Tornquist's above-alleged material breaches of his obligations under his Non-Competition and Confidentiality/Non-Solicitation Agreements, MiMedx has suffered damages in an amount in excess of $1 million, according to proof at trial.

29.      Pursuant to the terms of the parties' contracts, MiMedx is also entitled to recovery of its attorneys' fees and costs incurred in this action should it prevail.

10

## SECOND CLAIM FOR RELIEF

### SPECIFIC PERFORMANCE

30.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

31.     MiMedx has complied with its obligations under the Tornquist Non-Competition and Confidentiality/Non-Solicitation Agreements, except and to the extent that the same have been excused or prevented.

32.     Upon information and belief, Tornquist violated and is in material breach of his obligations under his Non-Competition and Confidentiality/Non-Solicitation Agreements as a result of his:

a.     use of MiMedx's confidential and Trade Secret information to solicit MiMedx's customers to conduct business with one or more companies other than MiMedx, including MiMedx's competitors;

b.     solicitation of MiMedx's customers with whom he has had Material Contact during the last two years to conduct business with one or more of MiMedx's competitors, rather than with MiMedx;

c.     solicitation of MiMedx's employees with whom he has had Material Contact during the last two years to sell products other than MiMedx products and/or to leave MiMedx's employ;

d.     providing the same services he provided to MiMedx to one or more competitors of MiMedx for his own benefit, including without limitation selling products of one or more of MiMedx's competitors; and

11

  e. engaging in business activity that interfered with his duties to MiMedx while employed with MiMedx, including without limitation selling products of one or more companies other than MiMedx, including MiMedx's competitors.

33. As a direct and proximate result of Tornquist's above-alleged material breaches of his obligations under his Non-Competition and Confidentiality/Non-Solicitation Agreements, MiMedx has suffered and will continue to suffer irreparable injury which is not adequately compensated by remedies available at law, including but not limited to the loss of MiMedx's goodwill with its customers. Indeed, Tornquist has already agreed that breach of his Non-Competition and Confidentiality/Non-Solicitation Agreements results in irreparable injury to MiMedx.

34. Additionally, Tornquist has recently separated from his employment with MiMedx and, upon information and belief, intends to continue his unlawful and unfair competition and solicitation of MiMedx's business and employees.

35. Pursuant to O.C.G.A. § 23-2-130, et seq., MiMedx is therefore entitled to a court order requiring Tornquist to comply with his obligations under his Non-Competition and Confidentiality/Non-Solicitation Agreements; specifically, the Court should issue an order requiring Tornquist to specifically perform the following obligations under his Non-Competition and Confidentiality/Non-Solicitation Agreements:

  a. cease the use of MiMedx's confidential and Trade Secret information to conduct business;

  b. cease solicitation of MiMedx's customers with whom he has had Material Contact during the last two years to conduct business with one

or more of MiMedx's competitors, rather than with MiMedx;

    c.    cease solicitation of MiMedx's employees with whom he has had Material Contact during the last two years to sell products other than MiMedx products and/or to leave MiMedx's employ; and

    d.    not provide the same services he provided to MiMedx to any competitors of MiMedx.

36.    In addition to specific performance, MiMedx is entitled to recover damages suffered as a direct and proximate result of Tornquist's above-alleged breaches of his duties under his Non-Competition and Confidentiality/Non-Solicitation Agreements.

37.    Pursuant to the terms of the parties' contracts, MiMedx is also entitled to recovery of its attorneys' fees and costs incurred in this action should it prevail.

### THIRD CLAIM FOR RELIEF

### MISAPPROPRIATION OF TRADE SECRETS

38.    MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

39.    Tornquist obtained access to MiMedx's Trade Secrets only after he entered into his Confidentiality/Non-Solicitation Agreements, and only for the limited purposes allowed thereunder to utilize such Trade Secrets solely in connection with the performance of his employment by MiMedx and not in competition with MiMedx.

40.    The Trade Secrets constitute "trade secrets" as that term is defined under the relevant trade secrets statutes, including without limitation the O.C.G.A. § 10-1-760, et seq. MiMedx's Trade Secrets are not commonly known by or available to the public or to MiMedx's competitors.  In addition, such information derives economic value, actual or

13

potential, from not being generally known to, and not being readily ascertainable by proper means by, others who can obtain economic value from its disclosure and use, including MiMedx's competitors. Further, the Trade Secrets are the subject of MiMedx's efforts that are reasonable under the circumstances to maintain their secrecy, including but not limited to restricting access to those with a need to know and by contractually requiring those persons with such access to maintain the confidentiality of the Trade Secrets and not to use the same except for the benefit of MiMedx.

41. MiMedx disclosed the Trade Secrets to Tornquist under a confidential relationship. Indeed, as a result of Tornquist's execution of his Confidentiality/Non-Solicitation Agreements, and MiMedx's policies restricting access and use of the Trade Secrets, Tornquist knew that he had a duty to maintain the secrecy of such information and to limit use thereof strictly for the benefit of MiMedx.

42. Furthermore, upon information and belief, Tornquist has also been provided, without MiMedx's consent or authorization, additional Trade Secrets by other employees of MiMedx with whom he is acting in concert to violate his legal and contractual duties to MiMedx.

43. Upon information and belief, Tornquist has misappropriated MiMedx's Trade Secrets by utilizing the same without MiMedx's consent to solicit MiMedx's customers to conduct business with one or more companies other than MiMedx, to cease conducting or to reduce the amount of business they conduct with MiMedx and to divert their business to one or more of MiMedx's competitors.

44. MiMedx has suffered damage as a result of Tornquist's above-alleged misappropriation of MiMedx's Trade Secrets and is entitled to recovery of the same under the

relevant trade secret statutes, including without limitation O.C.G.A. § 10-1-760, et seq.

45.     MiMedx is also entitled to injunctive relief precluding Tornquist from any future disclosure or other use MiMedx's Trade Secrets (whether obtained properly or improperly) pursuant to the relevant trade secret statutes, including without limitation O.C.G.A. § 10-1-762.

46.     As a result of Tornquist's, upon information and belief, willful, malicious and deliberate misappropriation of MiMedx's trade secrets, MiMedx is entitled to recovery of exemplary damages as provided by the relevant trade secret statutes, including without limitation O.C.G.A. § 10-1-763(b).

47.     As a result of Tornquist's, upon information and belief, willful, malicious and deliberate misappropriation of MiMedx's trade secrets, MiMedx is entitled to recovery of its attorneys' fees as provided by the relevant trade secret statutes, including without limitation O.C.G.A. § 10-1-764.

## FOURTH CLAIM FOR RELIEF

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS, BUSINESS RELATIONS AND/OR POTENTIAL BUSINESS RELATIONS

48.     MiMedx realleges each of the allegations in the foregoing of this Complaint as if fully set forth herein.

49.     MiMedx has contracts and ongoing relationships to sell its medical products to its customers and business relations with those customers and others in the industry.  MiMedx also has prospective business relations with its customers to continue to sell them its medical products and new customers interested in MiMedx's products.  MiMedx further has contracts of employment with its employees.

50.     Upon information and belief, Tornquist, individually and in concert with other

current and former MiMedx employees and certain distributors, has interfered with MiMedx's

contractual relations, business relations and potential business relations by conspiring to and

intentionally inducing its customers (and/or potential customers) to cease or reduce the

amount of their purchases of MiMedx's products and/or instead to purchase products from

one or more of MiMedx's competitors.

51.     Upon information and belief, Tornquist, individually and in concert with other

current and former MiMedx employees and certain distributors, has interfered with MiMedx's

contractual relations and business relations with its employees by intentionally seeking to

induce them to engage in business activity that interferes with their duties to MiMedx while

employed with MiMedx, including without limitation selling products other than MiMedx

products to MiMedx customers, and/or to terminate their employment with MiMedx.

Tornquist has knowledge of the Non-Compete and Confidentiality/Non-Solicitation

Agreements entered into by other MiMedx employees and knows that engaging in the above-

alleged interference with MiMedx's contractual relations, business relations and potential

business relations with its customers would place MiMedx employees in breach of their

obligations under their respective Non-Compete and Confidentiality/Non-Solicitation

Agreements.

52.     Tornquist's above-alleged intentional interference with MiMedx's contractual

relations, business relations and potential business relations with its customers, potential

customers and employees is unlawful, is not privileged and is without legal justification.  In

this regard, upon information and belief, Tornquist, individually and in concert with other

MiMedx employees and certain distributors, has intentionally interfered with MiMedx's

contractual relations, business relations and prospective business relations with its customers,

16

potential customers and employees by and through the use of MiMedx's Trade Secrets and confidential information whether properly or improperly obtained and also in violation of his contractual, statutory and common law duties to MiMedx.

53.     As a direct and proximate result of Tornquist's above-alleged intentional interference with MiMedx's contracts and relations with its customers, MiMedx customers and potential customers, upon information and belief, have refrained from purchasing MiMedx's products and/or instead have purchased such products from one or more of MiMedx's competitors, all to MiMedx's injury and damage, in an amount in excess of $1 million, according to proof at trial.

54.     As a direct and proximate result of Tornquist's above-alleged intentional interference with MiMedx's contracts and relations with its employees, MiMedx employees, upon information and belief, have engaged in business activity that interferes with their duties to MiMedx while employed with MiMedx, all to MiMedx's injury and damage, in an amount according to proof at trial.

55.     Tornquist, upon information and belief, willfully and maliciously engaged in the above-alleged interference with MiMedx's contracts and relations with its customers and employees, and as a result, MiMedx is entitled to an award of exemplary damages.

**FIFTH CLAIM FOR RELIEF**

**BREACH OF DUTY OF LOYALTY**

56.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

57.     Tornquist's above-alleged breaches of his contractual and legal duties to MiMedx by not working full-time for and competing with MiMedx (including without

17

limitation, by selling products other than MiMedx's products to MiMedx's customers) while concurrently in its employ are also violations of his duty of loyalty that he owed MiMedx while employed by MiMedx.

58.     As a direct and proximate result of Tornquist's above-alleged breaches of his duty of loyalty to MiMedx, MiMedx has suffered injury and damages in an amount in excess of $1 million, according to proof at trial.

59.     Tornquist, upon information and belief, willfully and maliciously engaged in the above-alleged breaches of his duty of loyalty to MiMedx, and as a result, MiMedx is entitled to an award of exemplary damages.

### SIXTH CLAIM FOR RELIEF

### UNFAIR COMPETITION

60.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

61.     Tornquist's above-alleged wrongful conduct, including his above-alleged breaches of his contractual and legal duties to MiMedx and his misappropriation of MiMedx's Trade Secrets, constitutes unfair competition with MiMedx's business.

62.     As a direct and proximate result of Tornquist's above-alleged unfair competition, MiMedx has suffered injury and damages in an amount in excess of $1 million, according to proof at trial.

63.     Tornquist, upon information and belief, willfully and maliciously engaged in the above-alleged unfair competition, and as a result, MiMedx is entitled to an award of punitive damages.

## SEVENTH CLAIM FOR RELIEF

## DECEPTIVE TRADE PRACTICES

64.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     Upon information and belief, Tornquist, individually and in concert with other current and former MiMedx employees and certain distributors, has engaged in a deceptive trade practice under O.C.G.A. § 10-1-370, et seq. by, including without limitation disparaging the goods, services and business of MiMedx by false or misleading representations of fact in connection with his attempts to and sales of products of companies that are competitors of MiMedx.

66.     MiMedx has suffered or is likely to suffer damage as a result of Tornquist's above-alleged deceptive trade practices and is entitled to injunctive relief under O.C.G.A. § 10-1-373.

67.     Tornquist, upon information and belief, willfully and maliciously engaged in the above-alleged trade practices, and as a result, MiMedx is entitled to an award of attorneys' fees and costs as provided by O.C.G.A. § 10-1-373.

## EIGHTH CLAIM FOR RELIEF

## ATTORNEYS' FEES

68.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

69.     Tornquist's above-alleged conduct demonstrates he has acted in bad faith, has been stubbornly litigious and/or has caused MiMedx unnecessary trouble and expense.

70.     Accordingly, as a result the above-alleged conduct, MiMedx is entitled to an

award of attorneys' fees, as provided by O.C.G.A. § 13-6-11.

## NINTH CLAIM FOR RELIEF

### PUNITIVE DAMAGES

71.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

72.     Tornquist's above-alleged conduct constitutes aggravating circumstances, in act and/or intention, entitling MiMedx to an award of punitive damages.

73.     Tornquist's above-alleged conduct shows willful misconduct, malice, fraud, wantonness, oppression and/or that the entire want of care which would raise the presumption of conscious indifference to consequences.

74.     Accordingly, as a result of the above-alleged conduct, MiMedx is entitled to an award of punitive damages, as provided by O.C.G.A. § 51-12-5.1.

**WHEREFORE,** Plaintiff MiMedx prays for the following relief:

1.     A temporary, preliminary and permanent injunction against Tornquist, his agents and those acting in concert with him, preventing them for one year after the separation of his employment with MiMedx, from: (i) providing the same services he provided to MiMedx to any competitors of MiMedx; (ii) soliciting MiMedx's customers with whom he had Material Contact during the last two years to conduct business with one or more of MiMedx's competitors, rather than with MiMedx; and (iii) soliciting MiMedx's employees with whom he had Material Contact during the last two years to leave MiMedx's employ;

2.     A temporary, preliminary and permanent injunction against Tornquist, his agents and those acting in concert with him, preventing them for three years after the separation of his employment with MiMedx, from divulging or making any use of MiMedx's

Confidential Information and Trade Secrets;

     3.     A temporary, preliminary and permanent injunction against Tornquist, his agents, and those acting in concert with him, preventing them from disclosing or otherwise using MiMedx's Trade Secrets or other confidential business information;

     4.     Compensatory damages in an amount in excess of $1 million, according to proof;

     5.     Punitive damages as permitted by law, including without limitation pursuant to O.C.G.A. § 51-12-5.1, and according to proof;

     6.     Costs and reasonable attorneys' fees, including without limitation pursuant to the parties' contracts and O.C.G.A. § 13-6-11; and

     7.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

     Plaintiff MiMedx requests a trial by jury on all matters as to which it is entitled by law.

Respectfully submitted, this 13th day of December, 2016.

                        **WARGO & FRENCH, LLP**

                        /s/ Joseph D. Wargo
                        Joseph D. Wargo
                        Georgia Bar No. 738764
                        999 Peachtree Street, NE
                        26th Floor
                        Atlanta, Georgia 30309
                        Telephone: (404) 853-1500
                        Facsimile: (404) 853-1511
                        E-mail: jwargo@wargofrench.com

Counsel for Plaintiff
MiMedx Group, Inc.

# EXHIBIT 1

*MiMedx Copy*

# Non-Competition Agreement

THIS AGREEMENT is made by and between MiMedx Group, Inc., (the "Company") and Luke A. Tornquist ("Employee"). In consideration of the employment or continued employment of the Employee and the salary and other remuneration and benefits paid by the Company to the Employee while Employee is employed by the Company, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, the parties agree:

1. Employee Acknowledgments

(a)     The Employee agrees that the Company is engaged in the highly competitive business of an integrated developer, manufacturer and/or marketer of (i) collagen based biomaterials and products and durable hydrogel biomaterials and products, (ii) bioimplants processed from human amniotic membrane, and (iii) other amnion- based products (the "Business").

(b)     The restrictive covenant set forth below in Section 2 is essential for the Company to protect its: (i) trade secrets (as defined by the Georgia Trade Secrets Act of 1990); (ii) valuable confidential information; (iii) substantial relationships with specific prospective or existing customers; (iv) customer good will associated with (A) the Business, including, but not limited to, by way of trade name, trademark, service mark, or trade dress, (B) a specific geographic location; or (C) a specific marketing or trade area; or (v) extraordinary or specialized training.

(c)     Employee: (i) by reason of the Company's investment of time, training, money, trust, exposure to the public, or exposure to customers, vendors, or other business relationships during the course of Employee's employment with the Company will attain a high level of influence or credibility with the Company's customers, vendors, or other business relationships; or (ii) by reason of working for the Company, will be in possession of selective or specialized skills, learning, or abilities, or customer contacts or customer information, or confidential information.

(d)     In the course of Employee's employment with the Company, Employee has done or will do one or more of the following (i) customarily and regularly solicit for the Company customers or prospective customers; (ii) customarily and regularly engage in making sales or obtaining orders or contracts for products or services to be performed by others; (iii) perform the following duties: (A) have a primary duty of managing the Company or of a customarily recognized department or subdivision of the Company; (B) customarily and regularly direct the work of two or more other employees; or (C) have the authority to hire or fire other employees or have particular weight given to suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees; or (iv) perform the duties of a key employee or professional, as such terms are defined under the Georgia Restrictive Covenants Act.

2. Non-Competition. During Employee's employment with the Company and for a period of one (1) year following the termination of Employee's employment for any reason (the "Termination Date"), Employee shall not, within the Territory, either directly or indirectly, provide the same or similar services (or consulting with respect to the same or similar services) as those provided by Employee for or on behalf of the Company within two (2) years prior to the Termination Date, for any individual or entity that provides products or services that are competitive with or the same as or similar to those provided by the Business. For purposes of this Agreement, "Territory" means the continental United States.

3. Severability. If any part or provision in this Agreement is determined to be in violation of any law, rule or regulation or otherwise unenforceable, such determination shall not affect the validity of any other part or provision of this Agreement, but such other parts or provisions shall remain in full force and effect. Each provision, paragraph, and subparagraph of this Agreement is severable from every other provision, paragraph and subparagraph and constitutes a separate and distinct covenant. If a court concludes that any provision, paragraph or subparagraph of this Agreement is overbroad or unenforceable for any reason, the court may modify that provision, paragraph or subparagraph to the minimum extent necessary and then enforce it as modified. The covenants in this Agreement are independent of any other rights or obligations between the parties, and any dispute between the parties as to any such right or obligations shall not delay, preclude or otherwise limit the enforcement of any rights or obligations in this Agreement.

4. Successors. This Agreement shall be binding upon and inure to the benefit of the Company and its successors and assigns, and the Employee, Employee's heirs, executors and administrators.

5. Injunctive Relief. The Employee understands, acknowledges and agrees that in the event of a breach or threatened breach of any of the covenants and promises contained in this Agreement, the Company shall suffer irreparable injury for which there is no adequate remedy at law, and the Company will therefore be entitled to injunctive relief from the courts enjoining said breach or threatened breach. The Employee further acknowledges that the Company also shall have the right to seek a remedy at law as well as or in lieu of equitable relief in the event of any such breach.

6. Tolling. In the event the enforceability of any of the terms of this Agreement shall be challenged in a court of competent jurisdiction and Employee is not enjoined from breaching any of the restrictive covenants, then if a court of competent jurisdiction finds that the challenged restrictive covenant(s) is enforceable, the time periods set forth herein shall be deemed tolled upon the filing of the lawsuit challenging the enforceability of this Agreement until the dispute is finally resolved and all periods of appeal have expired.

_____Employee Initial

7. Reasonableness of Restrictions. Employee warrants that the restraints imposed upon Employee under Section 2 above: (i) are reasonable, (ii) do not and would not impose an undue economic hardship upon Employee, (iii) are necessary for the reasonable and proper protection of the Company and the Business, and (iv) are reasonable in respect to subject matter, length of time and geographic area.

8. Waiver of Breach. The Company's waiver of a breach of any provision of this Agreement by the Employee does not waive any subsequent breach by the Employee, nor does the Company's failure to take action against any other employee for similar breaches operate as a waiver by the Company of a breach.

9. Entire Agreement and Modification. This Agreement represents the entire understanding between Employee and the Company on the matters addressed herein and may not be modified, changed or altered by any promise or statement by the Company other than in writing signed by Employee and an authorized representative of Company. This Agreement supersedes and entirely replaces any other all prior discussions, agreements, and understandings of every kind and nature, whether oral or in writing, between the parties with respect to the subject matters addressed herein. The waiver by the Company of a breach of any provision of this Agreement by any employee shall not be construed as a waiver of rights with respect to any subsequent breach by Employee.

10. Governing Law; Jurisdiction; Venue. This Agreement has been entered into under and shall be governed by the laws of the State of Georgia. The parties agree that the state and federal courts located in or covering Cobb County, Georgia shall be the sole and exclusive jurisdiction and venue for all disputes between the parties under this Agreement.  Employee hereby irrevocably consents to the jurisdiction and venue of the state and federal courts located in Cobb County, Georgia for adjudication of all disputes between the parties under this Agreement or otherwise related to the parties' relationship.  Employee hereby waives any objections or defenses to jurisdiction or venue in any such proceeding before such court.

11. Employee's Status. Nothing in this Agreement will be construed as constituting a commitment, guarantee, agreement or understanding of any kind or nature that the Company will continue to employ Employee, nor will this Agreement affect in any way the right of the Company to terminate the employment of Employee at any time and for any reason whatsoever. By Employee's execution of this Agreement, Employee acknowledges and agrees that Employee's employment with the Company is "at will".  No change of Employee's duties as an employee of the Company will result in, or be deemed to be, a modification of the terms of this Agreement.

12. Future Employment. For so long as the restricted period in Section 2 of this Agreement remains in effect, Employee shall provide any employers or prospective employers with a copy of this Agreement.  For so long as the restricted periods in the covenants in this Agreement remain in effect, the Employee also expressly consents to the Company providing a copy of this Agreement to any of the Employee's future employers.

The parties hereto have duly executed this Agreement on the date identified below.

**Employee has carefully read and understands the provisions of this Agreement and has had the opportunity to seek independent legal advice prior to signing this Agreement. Employee represents and warrants that Employee has entered into this Agreement voluntarily and after consulting with whomsoever Employee wished.**

Executed this __24__ day of __September__, 20 __13__.
     (day)         (month)       (year)

_____
Luke A. Tornquist

MiMedx Group, Inc.
_____
By: Lee Ann Lawson
    Vice President, Human Resources

# EXHIBIT 2

*MiMedx Copy*

# CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

THIS AGREEMENT is made by and between MiMedx Group, Inc., (the "Company") and Luke A. Tornquist ("Employee").  In consideration of the employment of the Employee and the salary and other remuneration and benefits paid by the Company to the Employee while Employee is employed by the Company, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, the parties agree:

1.  Definitions.

    (a)  "Business" means the business of an integrated developer, manufacturer and marketer of A) collagen based biomaterials or products and durable hydrogel biomaterials or products, B) bioimplants manufactured from human amniotic membrane or C) amnion based products.

    (b)  "Customer of Company" means a physician practice, physician, hospital, or any other person and/or entity that utilizes the products of the Company or procures the Company's products for utilization by others.

    (c)  "Material Contact" as used in Section 5 below means personal contact with a Customer of the Company in an effort to initiate, maintain or further a business relationship between Company and such Customer. "Material Contact" as used in Section 6 below means direct personal contact between Employee and another employee of the Company, its parent or other subsidiary of its parent in the performance of Employee's job duties on behalf of the Company.

    (d)  "Confidential Information" means information about the Company, its parent and the other subsidiaries of its parent and their respective employees, Customers, products, patients and/or business relationships with other parties which is not generally known outside of the applicable entity, which Employee learns of, receives knowledge of or access to, or develops or obtains from examination, testing or analysis, at any time and in any form or media, whether oral, written, graphic, machine readable, sample form draft, or other media, or in information storage and retrieval systems, in connection with Employee's employment with the Company, and which would be useful to competitors of the applicable entity.  Confidential Information includes, but is not limited to: (1) business and employment policies, marketing methods and the targets of those methods, bids, proposals, financial data, Customer lists, business plans, promotional materials and pricing; (2) the terms upon which the applicable entity obtains products from its vendors; (3) the nature, origin, composition and development of the Company's products; (4) all data, reports, analyses, notes, interpretations, forecasts, records, documents, agreements and information concerning the applicable entity or other parties which are not generally available to the public, analysis of a possible business relationship or transaction between the applicable entity and other parties, at any time and in any form, whether or not expressly marked as proprietary or confidential, including without limitation business plans; customer lists; financial statements and other financial information of the disclosing party and its customers; suppliers; know-how; strategic or technical data; technology (including without limitation all design, manufacturing and related technology); sales and marketing data; marketing research data; product research and development data; software programs (including source code), designs, developments, data and any components thereof, whether or not copyrightable; intellectual property; pricing information; any oral, written or visual information obtained by meeting representatives or personnel of the other  party or touring its facilities;  all oral or written analyses (including any valuation or proposed price or range of prices for the stock or assets of either party), notes, analyses, compilations, studies, interpretations or other documents and all copies thereof prepared by either party of the affiliated entity's business relationship, which contain, reflect or are based upon, in whole or in part, any of the information which is described in the this clause; and  the content and substance of any discussions or negotiations between the affiliated entity and other  parties, and the fact that such discussions or negotiations have taken place.: (5) information provided by third parties which the Company has a duty to protect from disclosure; (6) personnel information; (7) information regarding technology used by the applicable entity in the business; and (9) clinical trial data and outcomes

    (e)  "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar state law, as applicable.

2.  Employment.  Employee agrees to faithfully perform the duties assigned to Employee, and will not engage in any other employment or business activity while employed by Company which would interfere with Employee's full-time performance of Employee's duties for Company, or cause a conflict of interest.  Employee covenants that Employee is not subject to any agreements with a prior employer restricting Employee's ability to work for Company.  Employee further covenants that Employee does not possess any property or Confidential Information belonging to any prior or existing employer for use on behalf of Company.  Employee agrees to abide by all of the Company's policies and procedures, which may be amended from time to time.

3.  Duty of Confidentiality.  Employee agrees that during employment with the Company and for a period of three (3) years following the end of that employment for any reason, Employee shall hold all Confidential Information in confidence and shall not directly or indirectly divulge or make use of, copy, publish, summarize or remove any Confidential Information or Trade Secrets outside of employment with Company without prior written consent of the Company, except as otherwise required pursuant to valid judicial order, provided Employee shall provide written notice of such order to, and shall use Employee's best efforts to cooperate with, the Company to obtain a protective order or other remedy to ensure that confidential treatment will be afforded such Confidential Information. Employee acknowledges that applicable law may impose longer duties of non-disclosure. Notwithstanding anything herein to the contrary, Employee's obligations regarding the Company's Trade Secrets shall survive the termination of Employee's employment for any reason and shall continue thereafter for the maximum period of time permitted under applicable law.  The term "Confidential Information" does not include, however, information which  (a) is or becomes generally available to the public other than as a result of a breach of this Agreement by Employee; or (b) Employee can show was within Employee's  possession prior to its being furnished by or on behalf of the Company, provided that the information was not provided to Employee in violation of a confidentiality agreement or other contractual, legal or fiduciary obligation of confidentiality owed to the Company;

or (c) was received by Employee from a third party owing no duty to the Company and having the legal right to transmit the same, (d) is independently developed by Employee without the aid, application or use of the Confidential Information; or (e) is explicitly approved for release by written authorization of the Company.

4.  Company Property and Information.  The sole and exclusive property and information belonging to the Company includes, without limitation, all papers, records, data, notes, drawings, files, documents, and other materials, including all copies of such materials, relating to the Employee's employment services or the business of the Company that Employee possesses or creates as a result of or during Employee's employment by the Company, whether or not confidential, as well as all Company-issued equipment vehicles, keys, devices, computers, cell phones and hand-held communication devices, pagers, and data and information storage and retrieval devices. Employee agrees to return all of the Company's property and information within three (3) days following the end of Employee's employment with the Company for any reason.  To the extent Employee maintains property and information belonging to Company in electronic form on any computers or other electronic devices owned by Employee, Employee agrees to delete all such information fully and finally within three (3) days following the end of employment with Company for any reason, and, if requested by Company, to confirm the fact of such deletion in writing.

5.  Non-Solicitation Covenant.  While employed by the Company and for a period of twelve (12) months following the end of employment for any reason, Employee will not directly or indirectly solicit or attempt to solicit from any of the Customers with whom Employee had Material Contact during the last two (2) years of Employee's employment with the Company any business in competition with the Business of the Company. It is understood by the Employee that (i) the Company has attempted to limit Employee's right to solicit Customers only to the extent necessary to protect the Company from unfair competition during the twelve (12) months following the end of employment, and (ii) the purpose of these covenants and promises is (and that they are necessary) to protect the Company's legitimate business interests,  and to protect and retain (and to prevent Employee from unfairly and to the detriment of the Company utilizing or taking advantage of) those substantial contacts and relationships (including those with Customers of the Company) which Employee may establish due to Employee's employment with the Company. Employee represents that Employee's experience and abilities are such that existence or enforcement of these covenants and promises will not prevent Employee from earning or pursuing an adequate livelihood and will not cause an undue burden to Employee or Employee's family.

6.  Non-Recruitment of Company Employees.  While employed by the Company, and for a period of twelve (12) months following the end of employment for any reason, Employee will not directly or indirectly solicit or attempt to solicit any employee of the Company, its parent or other subsidiaries of its parent with whom Employee had Material Contact during the last two (2) years of Employee's employment with the Company for the purpose of encouraging, enticing, or causing said employee to terminate employment with the Company.

7.  Other Employment After Termination.  Employee acknowledges and represents that Employee has substantial experience and knowledge such that Employee can readily obtain subsequent employment which does not violate this Agreement.

8.  Choice of Law and Forum Selection.  All provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without reference to principles of conflict of laws.  Any lawsuit, claim, or other legal proceeding arising out of or relating to this Agreement shall be brought exclusively in the federal or state courts located in or covering Cobb County Georgia, and the Employee and the Company hereby submit to the personal jurisdiction and venue of the state and federal courts located in or covering Cobb County Georgia. In the event Company is the prevailing party in any such proceeding, the Employee shall reimburse the Company for the costs (including reasonable attorney's fees) incurred by the Company in such proceeding.

9.  Construction of Agreement.  The covenants contained herein shall be presumed to be enforceable, and any reading causing unenforceability shall yield to a construction permitting enforcement. If any single covenant or clause shall be found unenforceable, it shall be severed and the remaining covenants and clauses enforced in accordance with the tenor of the Agreement.  In the event a court should determine not to enforce a covenant as written due to overbreadth, the parties specifically agree that said covenant shall be enforced to the extent reasonable, whether said revisions be in time, territory, or scope of prohibited activities.

10. Successors.  This Agreement shall be binding upon and inure to the benefit of the Company and its successors and assigns and the Employee, Employee's heirs, executors and administrators.

11. Entire Agreement and Modification.  This Agreement represents the entire understanding between Employee and the Company on the matters addressed herein and may not be modified, changed or altered by any promise or statement by the Company other than in writing signed by Employee and an authorized representative of Company.  This Agreement supersedes and entirely replaces any other prior discussions, agreements, and understandings of every kind and nature, whether oral or in writing, between the parties with respect to the subject matters addressed herein.  The waiver by the Company of a breach of any provision of this Agreement by any employee shall not be construed as a waiver of rights with respect to any subsequent breach by Employee.

12. Injunctive Relief.  Employee understands, acknowledges and agrees that in the event of a breach or threatened breach of any of the covenants and promises contained in this Agreement, the Company shall suffer irreparable injury for which there is no adequate remedy at law, and the Company will therefore be entitled to injunctive relief from the federal or state courts located in or covering Cobb County Georgia enjoining said breach or threatened breach.  The existence of any claim or cause of action by Employee against the Company, including any dispute relating to the termination of this Agreement, shall not constitute a defense to enforcement of the covenants and promises contained herein

by injunction. Employee further acknowledged that the Company also shall have the right to seek a remedy at law as well as or in lieu of equitable relief in the event of any such breach.

**Employee has carefully read and understands the provisions of this Agreement, and has had the opportunity to seek independent legal advice prior to signing the Agreement. Nothing contained in this Agreement creates a contractual right to employment for a definite term, and either party may terminate the employment subject to this Agreement with or without cause at any time, and for any reason, including no reason. Employee represents and warrants that Employee has entered into this Agreement voluntarily and after consulting with whomsoever Employee wished.**

Executed this ____24____ day of ____September____ , ____2013____ .
                        *(day)*                    *(month)*                      *(year)*


_____                    MiMedx Group, Inc.
Luke A. Turnquist
                                                _____
                                                By: Lee Ann Lawson
                                                    Vice President, Human Resources


_____ Employee initial                                    Page 3 of 3