IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MIMEDX GROUP, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>LUKE TORNQUIST,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:17-CV-00399-LMM |

## CONSENT ORDER

On December 13, 2016, Plaintiff MiMedx Group, Inc. ("MiMedx") filed a Complaint against Defendant Luke Tornquist ("Defendant") in the Superior Court of Cobb County, Georgia (Civil Action File No. 16-109795) alleging, *inter alia*, that Defendant breached his employment agreements with MiMedx. On January 20, 2017, MiMedx filed a Petition for Temporary Restraining Order and Interlocutory Injunction ("Petition"). On February 1, 2017, Defendant removed the state court action to this Court. On February 2, 2017, this Court issued an order setting MiMedx's Petition for hearing on February 9, 2017. Defendant submitted his Opposition and Cross-Motion ("Cross-Motion") on February 7, 2017, to which Plaintiff replied on February 8, 2017. The Court conducted a hearing on February

9, 2017 and took the matter under consideration, permitting the parties to submit additional materials for the Court's consideration by 9:00 a.m. on February 10, 2017.

Having considered the Parties' papers, supporting affidavits, and arguments, the Court issues the following Order with consent of the parties:

1. Defendant is enjoined through December 12, 2017 from either directly or indirectly selling, within Minnesota, for any wound care application, any (i) collagen based biomaterials and products and durable hydrogel biomaterials and products,[1] (ii) bioimplants processed from human amniotic membrane, or (iii) other amnion-based products. For clarity, Defendant is not enjoined from selling any collagen based product that will be used in a non-wound care application.[2]

2. Defendant is enjoined through December 12, 2017 from directly or indirectly soliciting or attempting to solicit from any of the Customers with whom

---

[1] Solely for the purposes of this Order, "collagen based biomaterials" includes Predictive Technologies Group, Inc.'s PolyCyte, CoreCyte, or AmnioCyte, regardless of these products' actual collagen percentage.

[2] "Non wound care" does not include aesthetic procedures involving surgery or the healing of wounds, such as abrasions, except that non-wound care does include superficial abrasions resulting from elective cosmetic chemical or laser peels at locations outside Veterans Administration hospitals.

Defendant had Material Contact[3] during the last two (2) years of Defendant's employment with MiMedx for purposes of selling that Customer for wound care purposes any (i) collagen based biomaterials and products and durable hydrogel biomaterials and products, (ii) bioimplants processed from human amniotic membrane, or (iii) other amnion- based products.  For clarity, Defendant is not enjoined from soliciting a sale of any collagen based product from any of the Customers with whom Defendant had Material Contact during the last two (2) years of Defendant's employment with MiMedx, if that collagen based product will be used for a non-wound care application.

3. Defendant is enjoined through December 12, 2019 from directly or indirectly divulging or making use of, copying, publishing, summarizing or removing any Confidential Information[4] or Trade Secrets[5] of MiMedx.

---

[3] As defined in the September 24, 2013 Confidentiality and Non-Solicitation Agreement between Defendant and MiMedx: "Material Contact" means personal contact with a Customer of the Company in an effort to initiate, maintain or further a business relationship between MiMedx and such Customer.  "Customer of Company" means a physician practice, physician, hospital, or any other person and/or entity that utilizes the products of MiMedx or procures MiMedx's products for utilization by others.

[4] As defined in the September 24, 2013 Confidentiality and Non-Solicitation Agreement between Defendant and MiMedx: "Confidential Information" means information about the MiMedx, its parent and other subsidiaries of its parent and their respective employees, Customers, products, patients and/or business relationships with other parties which is not generally known outside of the

4. Nothing in this Order prevents the parties from disputing the validity of the restrictive covenants in this proceeding going forward.

**IT IS SO ORDERED** on February 13, 2017.

_____
HONORABLE LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

---

applicable entity, which Tornquist learned of, received knowledge of or access to, or developed or obtained from examination, testing or analysis, at any time and in any form or media, whether oral, written, graphic, machine readable, sample form draft, or other media, or in information storage and retrieval systems, in connection with Tornquist's employment with MiMedx, and which would be useful to competitors of the applicable entity.

[5] As defined in the September 24, 2013 Confidentiality and Non-Solicitation Agreement between Defendant and MiMedx: "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar state law, as applicable.

4